Third case for argument this morning, case number 20-2047, Western Missouri, Kerry Willis v. United States. Mr. Wray. Good morning, your honors. May it please the court, my name is Jeff Wray and I'm representing the United States today. I acknowledge at the outset that it's somewhat unusual for the United States to appeal from a judge-tried case. We do so today for very unique reasons. We neither challenge the factual findings of the district court nor challenge the damage assessment which is one of the hotly contested issues at the trial. Today we challenge two of the legal decisions made by the court at the conclusion of the discretionary function defense and the statute of limitations defense insofar as it requires presentment of a timely administrative claim. With respect to the discretionary function exception, this court has many times dealt with the doctrine. In its terms, it's deceptively simple, simply requiring that the government establish that there's an element of judgment or choice involved in a decision made by the government and that that choice or judgment is the kind that's grounded in social, economic, and political policy. Besides being deceptively simple, the devil's in the details in the application. In this case, however, we think strongly that the particular decision at issue here was exactly the type of decision that's protected under the discretionary function exception. This case involves the seizure of $364,000 in $1 coins from Ms. Willis' property. After it was seized by the IRS, an IRS agent, Rob Jackson, was confronted with a decision. The Internal Revenue Manual requires that when cash is seized, it's to be expeditiously deposited into an account. The manual explains the reasons for that, some of which are quite obvious, the most important being accountability. Counsel, I have a question about the nature of the seizure. Is it conceded that it was solely for forfeiture purposes? For purposes of this appeal, it is. That was a hotly contested issue before the trial court and is a significant determination if we were pursuing the detained goods exception. For reasons of internal politics within DOJ, I was not authorized to raise that particular defense on appeal. For the purposes of this, we would agree. Thanks. I just want to make sure. Thank you. Sure. Having seized this $354,000, Agent Jackson had a decision to make. Under the Internal Revenue Manual, as I mentioned, the general requirement is that cash is to be expeditiously deposited for accountability, for the protection of both government agents who are accused of theft and protection of claimants or potential criminal defendants whose money is seized that is protected from anything happening. In this case, pursuant to that general rule, Agent Jackson deposited these coins by way of a coin counting service provided by Dunbar into an IRS account. We do acknowledge that the Internal Revenue Manual says that this is the policy that is to be followed when cash is seized unless the seized cash is determined to be a collectible asset. The manual provides no further direction, no further instruction, and no further definition to an agent in the field as to when seized cash should be determined to be a collectible asset. It's our argument that Rob Jackson acted within his discretion in making the determination... Counsel, this is Judge Smith. Your position is that he acted with discretion or that he had discretion to choose whether this was a collection or whether this was mere currency? That's correct. In fact, in this particular case, there was some seized property, coins and dollar bills that were in special plastic sleeves, most of which were no longer monetized money, Confederate bills and whatnot. Do you concede it would have been at least possibly negligent to look at coins packaged the way these were in the quantity that these were to not even consider the possibility that they had valued in excess of their face value? I do agree that an argument could be made that that was not negligent or at least that there's a fact question for a trier of fact to determine as to whether or not that was negligence or not, which is why the discretionary function exists to remove the question of negligence or not negligence from such decisions, understanding that government agents in some circumstances need to be free to make those kinds of calls without second guessing after the fact by a trier of fact. But I do agree that there is an argument to be made that that was a negligent decision and I'm not conceding it was negligence, but I do think there's a fact question potentially with respect to that decision. Counsel, there's another decision by the government here besides the one made by Mr. Jackson and that was the decision not to return the coins when ordered. There's no discretion in that decision, is it? That's just not doing what was required by a court order. We agree that, and I don't want to jump ahead to the statute of limitations, but under the statute in section 983, that once a claim form was received from Ms. Willis, that the government had 90 days to either initiate civil forfeiture proceedings or to include as part of criminal forfeiture in an indictment these coins, and if not, after that 90-day period to return the money. In this case, the money was not returned until April 2015 well after the 90 days. I agree that that was negligence, but that negligence, that particular negligence, the failure to return the coin or the cash, I'm sorry, is not itself actionable here because the money was ultimately returned, and the real issue that's being raised in this appeal are the damages sustained allegedly by Ms. Willis with respect to the decision on September 27th to take the coins and convert them into cash, ultimately cash that was returned to them, but I do agree that that was negligence or at least a failure to abide by the statute following the December 5th claim form from Ms. Willis and to not return the coins within the 90-day period, which ended on March 5th, 2013. Counsel, can you help me with the second step of the discretionary function exception? I'm not even positive after reading our cases that I know what it means, but it says that it must be grounded in social, economic, and political policy through the medium of an action in tort. Why does this action here qualify as a policy issue? Because if a different decision is reached, and if in fact the IRS or any law enforcement agency can be second-guessed with respect to the decision they make upon seizure, in this case we'll just limit it to cash, as whether or not to deposit it or to preserve it as evidence, ultimately that forces the IRS to have to probably not expeditiously deposit, because there's all kinds of possibilities that exist if we're going to be concerned about the fact that these may be collectible assets. As I said, numerous bills have defects in them that might make them valuable. You could have scratch marks on a bill that an agent ignores and deposits, and then a claimant come forward and say, Mickey Mantle signed my dollar bill, and this had tremendous collectible value to me. The bottom line is, in this particular situation, the discretionary function applies because it's important for an agent to feel comfortable in following the rule to expeditiously deposit these coins and provide the protection necessary to not only the Willis's, but to the agents themselves, without having to worry about the fact that someone may second-guess that. The statute, are you able to hear me? Yes. Yes, I can hear you. Can you hear me, your honors? Yes. We can hear you, Mr. Ray. Okay. Okay. I will continue on, even though I'm getting some strange signals from my computer here. So, it's an unusual situation, but we do believe it does fit within the criteria of the discretionary function, and in fact, the Internal Revenue Manual specifically says the rule was adopted for budgetary and other reasons that were of concern to the IRS, in this case, not the least of which would have been an extensive storage cost to have stored these coins for any significant period of time. I'm wondering if any governmental action by an agent of the government doesn't have some kind of fiscal impact, and if so, wouldn't this rule simply always be in the way of this kind of case and this kind of complaint? Well, the court has somewhat addressed that in prior cases, and they don't allow for consideration of fiscal or budgetary concerns in every situation, only when the agency has made it that the agency took that into account, and in this case, the Internal Revenue Manual specifically says one of the bases for adopting this rule are budgetary concerns, which we believe in this particular case makes it appropriate to take that into account. Real briefly, because I'd like to save a little bit of time with respect to the statute of limitations, we're not disputing the essential facts found by the court, including the fact that Ms. Willis claims that she did not realize the coins were no longer in the physical possession of the IRS until April of 2015. Nonetheless, we believe she was armed with more than enough knowledge well before that, more than two years before that, to have instituted the suit. We think the court needs to look no further than Ms. Willis' own testimony at trial when I asked her, you knew by December 4, 2012, that the IRS had seized your coins, is that correct? And she answered yes, and we started the process to get them back, and that process included hiring an attorney, filing paperwork with the IRS. I'll just quickly say, kind of with respect to the question I was asked earlier, even if we assume Ms. Willis was entitled to assume that the United States would follow the law and that the coins were taken properly, once she made her claim on December 5, 2012, the United States had 90 days to return the coins. We obviously did not return the coins within 90 days, and we would argue that 90-day period triggered the two-year statute of limitations for her to file a claim, and even under that reading, she missed the time to make a timely claim, and we would argue that the statute of limitations would bar her claim. And I will continue with rebuttal and save the rest of my time. Thank you. Counsel, I do have one more question for you, which is, the government says, let's proceed on December 5, but actually, why did the tortious taking happen August 17, when the coins were actually taken? Is this just a matter of being conservative, or is there some doctrinal reason I'm missing? No, it's purely being conservative. Under Missouri law, which determines the tort, even though federal law determines the accrual, a conversion, and that's all that we have here is a conversion claim, that's all that's left, can either be a wrongful conversion, which we would argue occurs when the wrongful taking occurs, and you know who took it, or it can be a lawful taking, in which case conversion begins to accrue after you've made demand, and the coins have not been returned, or the money has not been returned in this case. We would argue under the most conservative approach would be an argument that we legally took the coins, they were entitled to make a claim, and our after they made the claim, but under either theory, their ultimately administrative claim was not timely filed. Thank you. Thank you, Mr. Ray. Mr. Ray Miller? Yes, your honor. May it please the court. My name is Grant Romeyer. Like Mr. Ray said, there are two issues for this court. In regards to our conversion claim, which the court, which the district court found meritorious. The first issue, which I think was properly brought up at the very beginning of Mr. Ray's questioning was, why were these coins seized? The reason these coins were seized, according to the government, the IRS, throughout this case up through trial, although it was not believed by the trial court, was that the coins were seized for evidence. Now, when they were seized for evidence, that changes things dramatically, both on discretionary function tests, as well as on the statute of limitations grounds, because seizing something for evidence is an independent basis for the government to legally withhold or retain that property, versus a criminal or civil forfeiture proceeding. So in this case, as to the discretionary function, there are multiple reasons why Agent Jackson had absolutely no discretion to deposit these coins. The law is very clear, and we are not in any disagreement as to 8th Circuit precedent, which clearly states that agency policy strips government employees of discretion when it specifically provides a course of action for the employee to follow. In this case, that agency policy is contained in the Internal Revenue Manual, which is hundreds of pages thick, and very, very detailed, as you would that, like here, is either evidence or a collectible asset. So the currency and cash policies, there's actually two policies that are pretty much mirrored. Well, Counselor, right there, when you say that when they seize, there has to be a decision. Somebody's got to decide whether it's evidence or a collectible or cash, or somebody's got to make a decision. That's the essence of discretion. Exactly. And I'm so glad that you asked that, Judge Smith, because the policy, as far as the Internal Revenue Manual, is very clear on this. And essentially, that decision needs to be made long before the seizure through something called pre-seizure planning, which has an entire chapter in the Internal Revenue Manual. And pre-seizure planning consists of, and this is policy 9.7.4.1, consists of anticipating and making intelligent decisions about what property should be seized, how and when it should be seized, and most important, whether it could be seized. In this case, Agent Jackson admits he did absolutely no pre-seizure planning at all. He didn't even know why the coins were seized to begin with. He just made a decision to deposit them. Now, if any pre-seizure planning was done, when they would know, he would know that these coins were a collectible asset, and they were kept in safes with multiple other collectible assets. It's the question whether this activity is discretionary, the issue, or whether the person actually exercised some discretion. Yeah, and I would argue that under Buckler, Your Honor, as well as Appleby, while there are elements of discretion, like how you conduct pre-seizure planning, how to determine whether these are collectible or not, in that pre-seizure planning process, there may be elements of discretion in there. I would concede that. But they cannot be wholly ignored. Appleby and Buckler make it very clear that an officer or any federal agent cannot just wholly ignore policy. And that is precisely what was done here. Because the pre-seizure planning even says at 9.7.6.1, with proper pre-seizure planning, problems with custody and storage of seized property will be limited. And the counter to that is, of course, if there's no pre-seizure planning, if it's a sloppy seizure, they ignore, and essentially they take the IRM and they throw it out the window. Cases like this happen. This is what happens when there's no pre-seizure planning, is that they take property, they claim it's for evidence, even though they claim it's for evidence, they admit it's for evidence throughout the trial, and the briefs by the United States completely ignore that the currency and specifically state that evidence, any currency or cash that's used as evidence should not be deposited either. So, I mean, that is precisely why the government claimed. I mean, that is what they've said throughout. Is that true in drug cases as well? Is that true in drug cases as well? I'm not a criminal defense lawyer, but if they're using the cash as evidence, particularly in this case, the arguable reason for evidence they had the money was claiming that there's some sort of money laundering that never came to effect. And money laundering for evidentiary purposes, it'd be important to know when and where these coins were purchased and how they came about. In this case, these coins were all in sealed boxes that had stamps from the banks on them. And so the evidence of that was lost, which I believe is precisely why this policy states what it does, so that evidence isn't lost. But in the end, with the discretionary function test, the only way we can get to the discretion of is it a collectible asset or not, which is not the only decision, is to ignore all pre-seizure planning, to ignore all the policies that require pre-seizure planning, require them to determine precisely what they're seizing, whose property they're seizing, and why they're seizing it, whether they're seizing it for evidence, whether they're seizing it for forfeiture. All of that should be done prior to seizure, or at the worst case, do it immediately after, just like the policy. Instead, nothing was written down, which was required, and the policies were just completely ignored. And Agent Jackson had I mean, as we can see from our discussion to this point, and as the government previously argued, the linchpin in this case is, and the big issue in this case, is Agent Jackson's decision to deposit these coins has destroyed their numismatic value. There is no question that Carrie Willis was completely unaware of this. This information was completely only within the they finally said, yes, we will give you your property back. At that point, they also said, and, you know, the coins were deposited. From that point forward, administrative claims were admittedly timely filed. In this case, timely proceeded to suit. Now, this issue with the government, once again, ignoring all of their policy, and not returning the coins after the forfeiture action was, where they were notified of a forfeiture action, but there was no forfeiture complaint filed. And the reason, as they stated at trial, that the coins were not returned is because they were keeping them as evidence. Under the government's position, essentially, the statute of limitations for conversion claim runs every time the government seizes property for evidence. And there is a policy directly on point in the asset forfeiture policy manual for the DOJ, which states the seizure of property for evidence provides an independent basis for the continued physical possession of the property. So, as long as the government was claiming they were seizing this property as evidence, that's an independent basis that they legally do have the property. And once they legally have the property, we do not have a conversion claim until they no longer legally withhold that property. The conversion claim under NAI 23.12, and there's three different ways you can have conversion, but the way that we would have submitted this is that when we did was by refusal to give up possession to an owner upon demand, even though the defendant's original possession of the property was. What's your date for the accrual of the cause of action of conversion in this case? Oh, exactly the same as Judge Booz, which is April, I think it's 13, 2015. That was when demand for the property was made, and it was prior to that. And once again, the accrual and the law is very clear on this as well. And the Staton case makes this very clear. That accrual is when you have to both know of the cause and the existence of the injury. I mean, no question, as Judge Booz found, that the existence of the injury was not known to Kerry Willis until April, 2015. But that relies completely, counsel, on the evidence claim, right? So if there's no evidence issue here, then undoubtedly it would have accrued in 2013, because at that point she would have said, why are you taking my property? This has nothing to coins for evidence, which is why they claimed they kept them. That's why they claimed they didn't. They were violating the other forfeiture policies because they're saying, hey, we're keeping this for evidence. We're investigating you. We're going to file something against you at some point. And they never do. Then in April of 2015, when there is counsel saying, hey, can my clients have their stuff back? They finally, when they relinquish the property, that's assuming, okay, we don't have any evidentiary value for it anymore. But there's no question throughout this case, they've said they took this property for evidence and restitution. That's what they claimed to trial. Granted, the trial court did not believe it, I mean, because there was no evidence of a crime. And they didn't really, you know, their actions were kind of inconsistent. I mean, it was just, I mean, I'm not going to lie, it was just sloppy from the get go. It was sloppy up and down how the Willis's were treated in this function. It's there, I get that, to protect agency policy making decisions. And I agree with Judge Booth that this is not a policy decision at all. The policy is written clearly. The policy says don't deposit it. But with this discretionary function, it's there, I get it, to kind of save money for when agencies make these policy agent decisions. But the counter to that is if we allow government agents to ignore the Internal Revenue Manual, you know, do these sloppy investigations and sloppy forfeitures like this, it's only going to create more litigation. And realistically, you know, essentially immunizing this type of conduct when there's IRM policies directly on point, only encourage more malfeasance and more sloppiness. One additional question on the statute of limitations. I know you've switched gears, but the district court made a finding that this was, this was, even at the time of the seizure, that the seizure was solely for forfeiture purposes. That would, and that's sort of why I was asking the question about your evidence issue, because in light of that finding, why didn't the claim accrue in 2013? If the sole basis was in fact they believe the court, the only plausible means for them to take this property, because there was not evidence of any crime, was forfeiture. They're saying, hey, we need to take it. But them saying we're keeping it for evidence allows them to legally keep it for evidence. There is no, there is no way that I can go, I'm across the street from the Springfield Police Department, there's no way I can go over there and take their evidence. They get to keep that until there's no longer an evidentiary value. There is no legal mean for me to, you know, take this evidence from the government. If the government claims it's evidence, they have a legal right to seize it. And since they have that legal right to seize it, our conversion claim does not accrue until, one, we have to know the existence of the injury, which is very important in this case, according to all of the law, but also until they don't have an evidentiary value. Because then they have a right to hold it. Why wouldn't you have known about the injury in 2013? They never, because nobody ever, we had no idea the coins were deposited until April 2015. And the undisputed fact is that we were unaware, our clients were unaware that these coins were deposited until April of 2015. And without the coins being deposited, we have no injury. The injury is depleting the numismatic value of the coins, tearing them from the boxes and throwing them in counters. That is the injury. Whether the coins are sitting in essentially my client safes or the government safes, they're of the same value. It makes no difference. There's no injury without the action of depositing this coin. And that action, that cause and the existence of that we did not know that caused the existence of that injury until April 2015. And that is an admitted fact. Mr. Grant, you have just a few seconds left. You can reserve that or exhaust your time. I will cede the rest of my time. We believe that the district court acted appropriately. We of course disagreed with the value he put on the coins, but that is not an issue here. And we believe that his decision should be upheld. All right. Thank you, Mr. Raymire. All right. Mr. Ray, you want to rebuttal? All right. I only have a few seconds here. With respect to evidence, the Internal Revenue Manual is clear. When cash is seized, it can have independent evidentiary value in that maybe it's got cocaine residue or fingerprints on it, but can also have value just in the fact that cash was seized. In the latter, you do not have to preserve the evidence. It was not preserved in this case. This was seized purely so that later an agent can testify this amount of money was seized. And in fact, by putting up and posting the forfeiture notice that we did under the statute, there is no evidentiary exception to that. After 90 days, we would have had to return the money or if we had the coins, return the coins. And so that in fact was the outside, most conservative trigger for the statute of limitations was 90 days after we'd received the notice of the claim from Carrie Willis. With respect to statute of limitations, just to say with respect to any argument that there was no injury, Carrie Willis, when she got the money and she testified it to a trial, did not go out and buy more coins. Instead, she used the money to pay bills because she said she needed the money. She was being injured by being deprived of her property. That is the very essence of a conversion claim. We would ask that the judgment below be vacated and that the court remand this with instructions to dismiss Carrie Willis' FTCA claim. Thank you. Thank you, Mr. Ray. Thank you also, Mr. Romeyer. We appreciate both counsel's argument to the court this morning. We will continue to study the briefing and render a decision in due course. Thank you. Counsel may be excused.